CASWELL v. HAZARD *et al.*

*(Supreme Court, General Term, First Department.   July 7, 1892.)*

BOOKS OF ACCOUNT—BURDEN OF PROOF.

Where an account on the books of a firm, kept under the direction of H., one of the members, was entitled, "H., Debtor and Creditor," and afterwards the words "Note Account" were added, the burden of proof is on H. to show that such account is in effect a bill payable account of the firm, and not his individual account therewith.

Appeal from judgment on report of referee.

Action by John R. Caswell against Rowland N. and John C. Hazard for an accounting. From a judgment for plaintiff on the report of a referee, defendants appeal. Affirmed.

For former report, see 2 N. Y. Supp. 784.

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*Anderson & Howland,* (*Henry H. Anderson* and *G. W. Murray,* of counsel,) for the appellants. *Lockwood & Hill,* (*L. A. Lockwood,* of counsel,) for the respondent.

PATTERSON, J.   This is an appeal from a judgment rendered upon the report of a referee in an action brought to compel an accounting by the defendants of the property and effects of a copartnership firm which, prior to the 31st of July, 1876, consisted of the parties plaintiff and defendant. That partnership expired by limitation on the day named, and it appears in the testimony that subsequent thereto, and before October, 1886, an action has been brought by the plaintiff against these defendants for an accounting, but such action was compromised and discontinued, and an agreement was entered into with reference to the disposition of the property and assets of the firm, and the rights of the parties thereto were defined in the agreement. It further appears that among the assets and property were certain fixtures contained in the store in Thirty-Ninth street, and in the store in Thirty-Fourth street, and real estate and buildings at Newport, in Rhode Island, and also merchandise and other personal property in the cities of New York and Newport, and goods consigned to various persons for sale. By the terms of the compromise agreement which was made for the purpose of winding up the copartnership affairs, it was provided that the plaintiff was to receive a certain portion of the merchandise, as shown in an inventory dated the 31st of July, 1876, and the fixtures in the store in Thirty-Ninth street were to be valued by appraisers, and the plaintiff was to receive in full payment, for his interest, one quarter of fourteen fifteenths of the value as determined by the appraisers; that as to the Twenty-Fourth street store he was also to receive one quarter of the value of the fixtures, to be determined by appraisers, and that he was to take as his share one quarter of one portion of the retail stock in that store as shown by an inventory of the same date, and that as to another portion of the stock it was to be divided. After deducting one fifteenth, the plaintiff was to receive one quarter of the remainder, and for any deficiency in his share the defendants were to pay Caswell the inventory value thereof. As to the Newport store and buildings, their value was fixed at $20,000, and the interest of Caswell therein was agreed to be $5,000; and upon the payment of that sum Caswell was to convey to R. N. Hazard, one of the defendants, an undivided quarter of the land free from incumbrance, and to transfer his interest in the stock and trade of the copartnership property at Newport. It was further agreed that the defendants were to have charge of collecting outstanding accounts and the settlement of copartnership debts, and that they alone should sign in liquidation, and upon payment of the copartnership debts, and allowing R. N. Hazard, one of the defendants, for the interest he had in the stock in the Thirty-Ninth street store and in the Twen-

ty-Fourth street store, and his proportion of the outstanding accounts, includ-
ing the Newport accounts, the defendants should account for and pay over
to Caswell one quarter of the remainder, as the same might be collected, pay-
ment to be made at the end of each month. It was also provided that Cas-
well was to be paid for his interest in the stock in an instrument factory,
after certain deductions. It is claimed by the plaintiff that the defendants
did not pay over the amounts to which he was entitled specifically under this
winding-up agreement; that is to say, that they neglected and refused, after
demand, to pay the whole of his share of the value of the fixtures; and that
there was a certain sum due for his share of the fixtures in the Thirty-Ninth
street and in the Twenty-Fourth street store; and that the defendants have
failed to account to him for the consigned goods and stock in trade in the
hands of various druggists in the United States held by them for sale on ac-
count of the firm; and that the defendants have exercised exclusive control
and ownership over the consigned goods, have asserted an absolute title to
the same, and have entered the same in their books as their own property;
and that they have refused and neglected to account for moneys received by
them from sales of consigned goods; and that they have collected large
amounts of debts due the firm at and since the time of the dissolution; and
that they have refused and neglected to render an account of the partnership
property of the firm, or of the amount due the plaintiff on account of the
partnership assets and effects; and judgment was asked that the defendants
be compelled to render an account of the property and effects of the firm, and
all dealings and transactions with respect thereto; and that an accounting
may be had, and the defendants may be compelled to pay the plaintiff the
amount which shall be found due on the accounting.

The answer generally denies all the allegations of the complaint, and also
that the defendants have neglected or refused to account, on request, by the
plaintiff, for the debts due and collected, and for expenditures claimed to have
been made by the defendants on account of the firm. By consent of the par-
ties, the action was referred, and upon the reference an account was pre-
sented by the defendants; and upon an examination of that account, and
upon the testimony presented to the referee concerning its items, he held that
both the defendants were chargeable with the sum of $1,629.25, with legal
interest from the date of the commencement of this action, June 14, 1878, for
an amount which appears to have been admitted by the defendants as a bal-
ance due the plaintiff. He also found that the plaintiff was entitled to judg-
ment against the defendants for the sum of $3,103.04, with interest from the
date of the commencement of this action, that principal sum representing the
plaintiff's share of the value of returned and consigned goods, and also that
the plaintiff was entitled to recover against the defendant Rowland N.
Hazard, individually, the sum of $9,333.47, with interest from the 25th of
March, 1878, that being one fourth of $39,567.71, which he found to be an
erroneous credit to the defendant named, which he caused to be made upon
the books of the copartnership in liquidation. The ground upon which the
referee so found was that this whole sum should have been charged to the
individual account of Rowland N. Hazard, and did not represent an amount
chargeable against the firm; and he also held that the plaintiff was entitled
to judgment against the defendant Rowland N. Hazard for the sum of $2,-
748.49, with interest from March 25, 1878, that being also an amount errone-
ously debited to the plaintiff's personal account in favor of the defendant
Hazard; the result of his report being that a judgment was directed against
both defendants for $8,045.37, including interest, and against the defendant
Rowland N. Hazard for the sum of $19,858.33, including interest. There
were also involved in the trial before the referee certain claims which were
made by the defendants for credits not allowed by the referee, and a great
many requests to find facts were denied by the referee, and, upon an exam-

ination of the whole case, we do not think that the referee's report should be disturbed, for no errors were committed in his refusals to find. As to the various charges made against the defendants in the report, and constituting the items upon which the judgment was directed, we consider, after an examination of the record, that the referee was right in the conclusion he reached as to the separate liability of the defendants. It is quite clear that the referee acted upon the proof presented respecting the account as rendered, and that his judgment was not controlled by the testimony of the expert bookkeepers who were called on either side, but that, as he adjusted the accounts, it was upon a consideration of the whole testimony as it related to these particular items. Concerning the charge made for the value of the returned and consigned goods, and the proportionate share to which the plaintiff was entitled, we think the testimony abundantly establishes the right to a recovery for that amount, and the same may be said as to the other items which have been charged against both of the defendants. But a serious contest was made with respect to the item of $9,333.47, the contention being on the part of the defendant Rowland N. Hazard that the sum of $39,567.71 was an amount properly chargeable against the firm, and that it represented moneys that were paid by him upon notes or obligations of the firm which had been negotiated and used by him or by the firm for the purposes of the business. There are certainly some peculiarities in this account which have been well commented upon by the learned referee. As it originally appeared upon the books and in ledger No. 2, it was a personal account of R. N. Hazard, and was entitled "R. N. Hazard, Debtor and Creditor." It seems that this account was begun in 1872, and was carried with that title until October, 1875, when the words "Note Account" were added to it, and subsequently that account was kept in such a way as to introduce a great deal of confusion into this branch of the case. We agree with the referee that this account, on all the testimony, must be treated as a personal account of Rowland N. Hazard. It was not successfully shown by the defendant that this account was any other during the winding up of the business than it was before October, 1875, or at the time he took possession of the books, to conduct the liquidation of the concern under the winding-up agreement. What he now claims as the "Note Account" was undoubtedly at all times nothing but his own individual liability, and, as is remarked by the referee, it staggers belief that this large sum of $39,000 could have been paid simply for discounts upon the amount of paper emitted by the firm. The burden of proof was upon the defendant Hazard to show that this sum was chargeable against the firm, and, upon an examination of the testimony, it is clear that he has failed to do so. A patient study of the whole subject satisfies us that the conclusions reached by the referee upon the merits of the accounting were correct, and we see no reason, on the testimony, for disturbing his decision as to any of the items for which he has directed judgment.

The judgment appealed from must be affirmed, with costs. All concur.